ORDERED.

**Dated: May 09, 2025**

*Caryl E. Delano*
Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| Artistic Holiday Designs, LLC, and<br>Holiday Creations Pro, Inc., | Case No. 2:25-bk-00153-FMD<br>Case No. 2:25-bk-00154-FMD |
| Debtors.<br>_____/ | *Jointly Administered with*<br>2:25-bk-00153-FMD |

**AMENDED AGREED FOURTH INTERIM ORDER: (I) AUTHORIZING USE
OF CASH COLLATERAL; AND (II) SCHEDULING CONTINUED HEARING[1]
(Related Doc. No. 5 in Case No. 2:25-bk-00153, and 3 in Case No. 2:25-bk-00154)**

THIS CASE came on for hearing on May 7, 2025, at 10:00 a.m. (the "**Hearing**") on the *Emergency Motion Seeking Authority to Use Cash Collateral, Effective as of the Petition Date* ("**Motion**") filed by Artistic Holiday Designs, LLC (Doc. No. 5), and Holiday Creations Pro, Inc. (Doc. No. 3) (collectively, the "**Debtors**" and individually, a "**Debtor**") and the Objection of MEP Capital Holdings III, L.P. to Debtors' Joint Emergency Motion Seeking Authority to Use Cash Collateral Effective as of the Petition Date (Doc. No. 50) and the Initial Response in Opposition to the Joint Emergency Motion Seeking Authority to Use Cash Collateral as of the Petition Date

---

[1] This Order amends the Court's *Agreed Fourth Interim Order: (I) Authorizing Use of Cash Collateral; and (II) Scheduling Continued Hearing* (Doc. No. 122) to attach a copy of the Approved Budget (defined in paragraph 3 below), which was inadvertently omitted from the original order.

(Doc. No. 104). For the reasons stated orally and recorded in open court that shall constitute the decision of the Court, it is

**ORDERED**:

1.  The Motion is **GRANTED** on a further interim basis as set forth herein.

2.  MEP Capital asserts, and Debtors acknowledge and agree, but the Court does not adopt as findings in this Interim Order, the following (collectively, the "**Acknowledgements**"):

    a.  Prior to the initiation of the above-captioned case, Debtors became indebted to, and granted certain security interests to, MEP Capital pursuant to that certain Senior Secured Loan Agreement dated as of June 15, 2022 (as amended, restated, extended or modified from time to time, the "**Loan Agreement**")[2], along with other loan and security agreements executed in connection therewith (collectively referred to in the Loan Agreement and herein as the "**Loan Documents**") pursuant to which MEP Capital made loans to Debtor.

    b.  Pursuant to the Loan Documents, in consideration of the loans and other financial accommodations extended to Debtors under such agreements, and to secure the payment and performance of Debtor's obligations under the Loan Documents, Debtors granted MEP Capital security interests and liens in substantially all of Debtor's assets to the extent described in the Loan Documents (collectively, the "**Prepetition Collateral**");

    c.  Subject to the assertion of a Challenge prior to the expiration of the Challenge Deadline (as both terms are defined herein), MEP Capital duly perfected security interests in, and liens upon, the Prepetition Collateral by filing financing statements and

---

[2] Capitalized terms used and not otherwise defined herein shall have the meaning provided in the Loan Agreement.

taking certain other actions and, as a consequence, MEP Capital has valid, perfected and enforceable first-priority liens upon, and security interests in, the Prepetition Collateral;

      d.      As of the Petition Date, Debtors were, and remain, in default of their obligations under the Loan Documents;

      e.      MEP Capital asserts that under the Loan Documents, the balance of the Loan on the Petition Date was approximately $5,686,203.11, plus fees, costs, and expenses (including, without limitation, legal fees and expenses) that have accrued or may accrue (all obligations of Debtors arising under the Loan Documents being collectively referred to herein as the "**Credit Obligations**");

      f.      The Credit Obligations and the Loan Documents constitute valid and binding obligations of Debtor;

      g.      All of the cash and cash equivalents generated by Debtor's operations wherever located, and all cash and cash equivalents generated from asset dispositions with respect to the Prepetition Collateral and all proceeds from collection of accounts receivable generated by the operation of Debtor's operations or the disposition of any Prepetition Collateral, constitute MEP Capital's cash collateral as defined in section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"); and

      h.      Subject to the entry of a Final Order approving the Debtor's use of Cash Collateral, MEP Capital has a first-priority, valid and perfected security interest in, and lien upon, the Cash Collateral and the other Prepetition Collateral, in an amount to be agreed upon by the Debtors and MEP Capital, or by Court order under section 506 of the Bankruptcy Code.

3. **Cash Collateral Authorization**. Subject to the provisions of this order and each of the applicable provisions of Bankruptcy Code, the Debtors are authorized to use cash collateral[3] to pay: (a) amounts expressly authorized by this Court, including payments to the U.S. Trustee for quarterly fees; (b) the current and necessary expenses set forth in the budget attached hereto as Exhibit "A" (the "**Approved Budget**"), plus (i) an amount not to exceed ten percent (10%) for each line item, or (ii) an amount in excess of ten percent (10%) of any line item so long as the total of all amounts in excess of all line items for the Approved Budget do not exceed five percent (5%) in the aggregate of the Approved Budget. The Debtors are not permitted to use cash collateral in excess of the line items in the budget or for items not included in the Approved Budget.

4. **Debtors Obligations**. The Debtors shall timely perform all obligations of a debtor in possession required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (each such rule a "**Bankruptcy Rule**"), and the orders of the Court.

5. **Access to Records and Premises**. Upon reasonable notice, and provided that it does not unreasonably interfere with the business of the Debtors, the Debtors shall grant to MEP Capital Holdings III, L.P. ("**MEP Capital**"), B Squared, Inc., Melissa and Doug, LLC, and the United States Small Business Administration (collectively, the "**Lien Claimants**" and collectively, except for MEP Capital, the "**Junior Lienholders**") access to the Debtors' business records and premises for inspection.

6. **Replacement Lien**. As adequate protection for any potential valid, properly perfected security interest or lien that any Lien Claimant may have, the Lien Claimants shall have

---

[3] Nothing contained herein shall be deemed an admission by the Committee, or any other party in interest other than the Debtors, nor a finding of this Court, that MEP Capital has a secured interest in Debtor's cash or in deposit accounts of the Debtors. The Court will reserve any ruling on that issue for a final order.

a perfected lien (the "**Replacement Lien**") against all the Debtors' post-petition assets to the same extent and with the same validity and priority as their alleged prepetition lien, without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law.

       7.    **Further Adequate Protection**. As further security for any diminution in value of any security interest in cash collateral and other collateral that MEP Capital may hold resulting from the Debtors' use of such cash collateral and other collateral from the Petition Date, and, subject only to the Carve Out (as defined below), MEP Capital shall be granted a conditional[4] superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code (a "**Superpriority Claim**") to be *pari passu* with any claimants granted a Section 507(b) claim with any lienholder having an equal priority with MEP Capital, subject in all respects to (i) the Carve Out (as defined hereinbelow), (ii) the validity of MEP Capital's alleged prepetition liens (as so alleged, the "**Prepetition Liens**") and proof of the diminution in value, and (iii) the claim of any secured creditor having a greater priority than MEP Capital in the cash collateral and other collateral. Notwithstanding the foregoing, nothing herein should prejudice MEP Capital from pursuing an additional claim pursuant to section 507(b) for further failure of adequate protection. Without limiting the foregoing in any respect, and subject to MEP establishing the validity of the Prepetition Liens and proof of the diminution in value, MEP Capital may at any time request that the Court enter an order providing additional protections as a condition to the continued use of cash collateral.

---

[4] For the avoidance of doubt, and notwithstanding anything to the contrary herein, all of the adequate protection provided to any Lien Claimant, including the Superpriority Claim, shall be conditional upon the respective Lien Claimant establishing a valid, properly perfected lien with respect to the cash collateral or the other collateral, as the case may be with respect to the particular adequate protection at issue.

8. **Carve-Out**. Notwithstanding anything to the contrary in this Interim Order, but subject to the provisions of this paragraph 7, the Replacement Liens and Superpriority Claim granted to MEP Capital herein shall be subject in all respects to a carve out ("**Carve Out**") for: (a) fees required to be paid to the U.S. Trustee under section 1930(a) of Title 28 of the United States Code (the "**U.S. Trustee's Fees**"); (b) the actual unpaid fees and expenses, up to the amounts set forth in the "Accounting & legal" line item of the Approved Budget (the "**Budgeted Professional Fees and Expenses**"), incurred or earned by counsel for any professional retained by the Debtors ("**Debtors' Professionals**") or the professionals retained by the Committee (defined below) (the "**Committee Professionals**," and, collectively with the Debtors' Professionals, the "**Professionals**") prior to the occurrence of a Termination Event (defined below) or other termination of the Debtors' authority to use cash collateral pursuant to this Interim Order; *provided*, *however*, that nothing contained herein shall be deemed as a consent to the allowance of the fees or expenses of any Professionals or a waiver of the rights of MEP Capital to object to any requests for allowance of any fees or expenses by any of the Professionals. The total amount of the Carve Out for the Debtors' Professionals shall not exceed $50,000.00 prior to entry of a Final Order, and upon entry of a Final Order, the Carve Out for the Debtors' Professionals shall be increased by $100,000.00 for a total of no more than $150,000.00 during this case. The total amount of the Carve Out for the Committee Professionals shall not exceed $50,000.00 prior to entry of a Final Order, and upon entry of a Final Order, the Carve Out for the Committee Professionals shall be increased by $75,000.00 for a total of no more than $125,000.00 during this case. Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use cash collateral in accordance with and limited to the amounts in the Approved Budget to pay such compensation and expense reimbursements of the Professionals as may be awarded by the Court

pursuant to sections 328, 330 or 331 of the Bankruptcy Code, unless the Court authorizes interim monthly compensation.  Notwithstanding the foregoing, however, the Carve-Out in favor of the Committee Professionals shall not exceed $15,000 relative to any fees incurred in connection with a Challenge which is unsuccessful in avoiding any lien of MEP Capital. Nothing in this paragraph 7 shall prejudice or impair the rights of the Professionals to request an award of aggregate compensation in excess of the amounts set forth in the Approved Budget (the "**Unbudgeted Professional Expenses**") or the rights of MEP Capital to object to the amount or reasonableness of the Unbudgeted Professional Expenses. Any claim for Unbudgeted Professional Expenses shall be subordinate to the Superpriority Claim granted to MEP Capital pursuant to this Interim Order.

9. **Insurance**. The Debtors shall maintain insurance coverage for its property in accordance with its obligations under the loan and security documents with the Lien Claimants.

10. **Without Prejudice**. This Order is without prejudice to: (i) any subsequent request by a party in interest to modify adequate protection or restrictions on use of cash collateral; (ii) any other right or remedy which may be available to any creditor; and (iii) any challenges by the Debtors and/or the Joint Committee of Creditors Holding Unsecured Claims (the "**Committee**") as to the validity, priority, or extent of any lien(s) asserted by any creditor in the above-captioned bankruptcy cases.

11. **Objections to Credit Obligations and Lien Validity**. All parties in interest, excluding the Debtor but including the Committee, shall have through July 7, 2025 (the "Challenge Deadline") to commence an adversary proceeding or contested matter (a) challenging the validity, enforceability, priority or amount of the Credit Obligations or the Prepetition Liens, and (b) asserting any claim or cause of action against MEP Capital whether having arisen under applicable federal or state law, or the Bankruptcy Code, and whether having arisen in or in connection with

the Credit Obligations, or otherwise (any of the foregoing, a "Challenge"); *provided*, *however*, that nothing contained herein shall constitute a determination that any party in interest has standing to pursue a Challenge. If no adversary proceeding or contested matter asserting a Challenge has been properly commenced on or before the Challenge Deadline, (i) the Acknowledgments shall be binding on all parties in interest; (ii) the Credit Obligations shall constitute allowed claims for all purposes of this case, subject to the Debtor's and the Committee's right to seek a Court Order determining the value of MEP Capital's secured claim under section 506 of the Bankruptcy Code; (iii) the Prepetition Liens shall be deemed legal, valid, binding, perfected, and otherwise unavoidable, first-priority liens in the Prepetition Collateral; (iv) the Credit Obligations shall not be subject to any other or further challenge by any party in interest; and (v) all parties in interest shall be forever barred from asserting any Challenge or otherwise contesting the Credit Obligations, the allowed claim with respect thereto, or the Prepetition Liens, subject to the right of any party in interest, including the Debtor and/or the Committee, to seek a Court Order determining the value of MEP Capital's secured claim under section 506 of the Bankruptcy Code.

12. **Termination**. The Debtors' authorization to use cash collateral, and MEP Capital's consent to the same, whether under this Interim Order or pursuant to any subsequent approval or a Final Order, shall immediately cease upon the earliest occurrence of any Termination Event. As used herein, "**Termination Event**" shall mean any of the following:

    a.    Any Debtor makes any transfer or payment that is both (i) not authorized by this Interim Order, and (ii) not of a character or type of expense contemplated in the Approved Budget to be incurred by the Debtors during this case, unless MEP Capital provides prior written consent to such transfer or payment;

  b.  Any Debtor's case is converted to a case under chapter 7 of the Bankruptcy Code, unless such conversion is consented to in writing by MEP Capital;

  c.  The entry of any order materially modifying, reversing, revoking, staying, rescinding, vacating or amending this Interim Order without the prior written consent of MEP Capital;

  d.  Any other person or party in interest is granted or is to be granted, without the prior written consent of MEP Capital, an interest, adequate protection or assurance, whether pursuant to sections 361, 362, 363, 364, or 365 of the Bankruptcy Code, under applicable law, by voluntary act of any Debtor, or otherwise, in any property in which MEP Capital has an interest, including cash collateral and/or other collateral which interest is senior to, or granted equal priority with, the interests of MEP Capital therein; or

  e.  Any Debtor violates or breaches any of its covenants or obligations under this Interim Order; *provided* that MEP Capital files a written notice with the Court and serves it on the Debtors, the UST, the Committee, or counsel for such committee if engaged, and the Junior Lienholders at least five (5) business days before the effective date of such termination; *provided further* that such Debtor shall have the right to cure any such violation or breach within three (3) business days of actual receipt of such written notice.

MEP Capital may agree to extend any deadline or waive any requirement contained in this paragraph 11, without further order of this Court; *provided* that any such extension or waiver shall not be effective unless in writing and executed by MEP Capital. Upon the occurrence of a Termination Event, and the termination of the Debtors' authorization to use cash collateral

9

pursuant to this paragraph 11, (i) MEP Capital shall file a notice of termination with the Court providing the reason for said termination and serve said notice on the UST, the Committee, the Junior Lienholders, the Debtors and all parties that enter an appearance; and (ii) upon the filing of the notice of termination discussed in the immediately preceding subsection, the Debtors shall immediately cease use of cash collateral, unless MEP Capital consents to such use, in writing, after such termination.

13. **Enforcement**. The Court retains jurisdiction to enforce the terms of this Order.

14. **Written Report**. The Debtors shall provide a report (the "**Bi-Weekly Report**") verified by an officer of the Debtors, to be provided to MEP Capital, the Committee, and the Office of the United States Trustee on or before noon (Eastern) on Friday every other week: (i) itemizing and cumulatively totaling all post-petition receipts and disbursements for the previous two weeks; (ii) setting forth a performance vs. Approved Budget comparison analysis (including with respect to collections and disbursements) for the previous two calendar weeks; (iii) setting forth a performance vs. Approved Budget comparison analysis (including with respect to collections and disbursements) for the cumulative period beginning with the petition date through the conclusion of the previous calendar week; and (iv) itemizing expenses incurred but not paid (and the terms thereof) during the previous two calendar weeks, each to be in form and substance reasonably satisfactory to MEP Capital and the Committee.

15. **Immediate Effect**. This Order shall be immediately effective and enforceable upon entry, is made effective on the petition date, and the 14-day stay period contemplated in Bankruptcy Rule 6004(h), to the extent applicable, shall not apply.

16. **Continued Hearing**. The Court shall hold a further hearing on the Motion on July 16, 2025, at 10:30 a.m.  The cash use authorized pursuant to this Order shall remain in effect until

the aforementioned hearing. Unless otherwise notified, Judge Delano will conduct all Fort Myers hearings by Zoom from Tampa Courtroom 9A. Parties may attend the hearing by video or telephone via Zoom. UNLESS INSTRUCTED OTHERWISE, PARTIES MAY NOT APPEAR IN PERSON AT THE FORT MYERS COURTHOUSE. Parties are directed to consult Judge Delano's Procedures Governing Court Appearances regarding policies and procedures for attendance at hearings by video or telephone via Zoom, available at https://www.flmb.uscourts.gov/judges/delano. If you are unable to access the Court's website, please contact the Courtroom Deputy at 813-301-5195 no later than 3:00 p.m. one business day before the date of the hearing.

Attorney Michael Dal Lago is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three (3) days of entry of the order.

172446339v5

**Artistic Holiday Designs & Holiday Creations**
**13 Week Budget**
**4/21/25 - 7/14/25**

| | 4/21/2025 | 4/28/2025 | 5/5/2025 | 5/12/2025 | 5/19/2025 | 5/26/2025 | 6/2/2025 | 6/9/2025 | 6/16/2025 | 6/23/2025 | 6/30/2025 | 7/7/2025 | 7/14/2025 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | $20,000 | $25,860 | $163,720 | $92,080 | $149,140 | $301,044 | $195,595 | $127,455 | $216,515 | $133,875 | $201,235 | $133,595 | $159,655 |
| Revenues-A/R Collections - AHD | 29,000 | 184,000 | | 150,000 | 241,044 | | | 120,000 | | 150,000 | | 115,000 | |
| Revenues-A/R Collections - HC | 51,000 | 43,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 41,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Total Funds Available | 100,000 | 252,860 | 166,720 | 245,080 | 393,184 | 304,044 | 198,595 | 288,455 | 219,515 | 286,875 | 204,235 | 251,595 | 162,655 |
| **Disbursements** | | | | | | | | | | | | | |
| Officers Salary | 6,977 | 6,977 | 6,977 | 6,977 | 6,977 | 6,977 | 6,977 | 6,977 | 6,977 | 6,977 | 6,977 | 6,977 | 6,977 |
| Payroll (including taxes) | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
| Contractor Salary | 9,457 | 9,457 | 9,457 | 9,457 | 9,457 | 9,457 | 9,457 | 9,457 | 9,457 | 9,457 | 9,457 | 9,457 | 9,457 |
| Supplies | 5,000 | 5,000 | 5,000 | 5,000 | 2,500 | 2,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Rent | 4,680 | 4,680 | 4,680 | 4,680 | 4,680 | 4,680 | 4,680 | 4,680 | 4,680 | 4,680 | 4,680 | 4,680 | 4,680 |
| Bank Charges | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Insurance | 3,955 | 3,955 | 3,955 | 3,955 | 3,955 | 3,955 | 3,955 | 3,955 | 3,955 | 3,955 | 3,955 | 3,955 | 3,955 |
| Credit Cards | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Utilities | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Accounting Fees | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| Marketing | 500 | 500 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 500 | 500 | 500 | 500 | 500 | 500 |
| Postage & Delivery | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| Vehicles | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Operating Expenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Logistics | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Equipment Rentals | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Miscellaneous | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Legal/Professional Fees | | | | | | 36,309 | | | | 15,000 | | 20,000 | |
| Taxes | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| COGS | | 15,000 | | 20,000 | 20,000 | | | | 15,000 | | | | |
| U.S. Trustee Fees | | | | 1,300 | | | | 1,300 | | | | 1,300 | |
| Priority Payments | 8,996 | 8,996 | 8,996 | 8,996 | 8,996 | 8,996 | 8,996 | 8,996 | 8,996 | 8,996 | 8,996 | 8,996 | 8,996 |
| Adequate Protection Payment | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| Total Disbursements | 74,140 | 89,140 | 74,640 | 95,940 | 92,140 | 108,449 | 71,140 | 71,940 | 85,640 | 85,640 | 70,640 | 91,940 | 70,640 |
| Cash Available End of Period | $25,860 | $163,720 | $92,080 | $149,140 | $301,044 | $195,595 | $127,455 | $216,515 | $133,875 | $201,235 | $133,595 | $159,655 | $92,015 |

Exhibit A